UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

YAHYA ABDUL-ALEEM,                              :

                 Petitioner,       :       **MEMORANDUM DECISION**

           - v -                          :       17-CV-5602 (DC)

THOMAS GRIFFIN, Superintendent of               :
Green Haven Correctional Facility,

                           :

               Respondent.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:         YAHYA ABDUL-ALEEM
                     Petitioner *Pro Se*
                     DIN 12-A-2090
                     Green Haven Correctional Facility
                     P.O. Box 4000
                     Stormville, NY 12582

                     MELINDA KATZ, Esq.
                     District Attorney
                     Queens County
                     By:    William Hauer Branigan, Esq.
                            Assistant District Attorney
                     125-01 Queens Boulevard
                     Kew Gardens, NY 11415
                            Attorney for Respondent

CHIN, Circuit Judge:

       On April 30, 2012, following a jury trial, Yahya Abdul-Aleem was

convicted in the Supreme Court of the State of New York, Queens County (Holder, *J.*),

of second-degree murder, second-degree attempted murder, second- and third-degree

criminal possession of a weapon, and first-degree reckless endangerment.  Dkt. 7-3 at 32.  He was sentenced, as a second violent felony offender, to an indeterminate term of imprisonment of thirty-seven years to life for all five counts.  *Id.* at 32-33.  His convictions were affirmed by the Appellate Division, Second Department, *People v. Abdul-Aleem*, 20 N.Y.S.3d 153 (2d Dep't 2015) ("*Abdul-Aleem I*"), and the New York Court of Appeals denied leave to appeal, *People v. Abdul-Aleem*, 62 N.E.3d 123 (N.Y. 2016) (Abdus-Salaam, J.) ("*Abdul-Aleem II*").

On September 26, 2017, Abdul-Aleem petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition").  *See* Dkt. 1.  Represented by the Queens County District Attorney's Office, respondent Thomas Griffin opposed the Petition on February 1, 2018, and Abdul-Aleem replied on April 30, 2018.  *See* Dkts. 8, 12.  On May 11, 2022, after exhausting his state court remedies on an additional claim for relief, Abdul-Aleem supplemented his petition.  *See* Dkt. 41.  Respondent opposed the supplemented petition on July 27, 2022, and Abdul-Aleem replied on August 16, 2022.  *See* Dkt. 44, 49.  On February 3, 2023, the case was reassigned to the undersigned.

For the reasons set forth below, the Petition is denied.

## BACKGROUND

### I.    *The Facts*

The evidence at trial established the following:

On August 6, 2006, Abdul-Aleem argued with Stanley Pierre-Paul outside a barbershop on Sutphin Boulevard in Queens, New York.  Pierre-Paul struck Abdul-Aleem in the face, and Abdul-Aleem hit him back.  Dkt. 7-1 at 66-73.  Later that day, Pierre-Paul was sitting with Donald Niles in a parked car when Abdul-Aleem drove up to them in a gold sports utility vehicle and fired five gunshots into their car.  *Id.* at 83-84, 92.  A bullet struck Pierre-Paul in the side of his head and killed him.  *Id.* at 522.  The other four shots hit the driver's-side door and rear window.  *Id.* at 343.

Later that day, Detective John Kissane interviewed Niles at the police precinct.  *Id.* at 385.  Niles described the shooter to Detective Kissane, noting that he recognized him "from the neighborhood" but did not know his name.  *Id.* at 205-06.  Niles then identified Abdul-Aleem as the shooter from a photo array.  Dkt. 7 at 612.

Abdul-Aleem fled from New York after the murder in a silver Chevrolet Trailblazer that he had rented from John F. Kennedy Airport.  Dkt. 7-1 at 225, 380.  Two days after the shooting, on August 8, 2006, Abdul-Aleem failed to appear in court for two unrelated criminal charges against him, and bench warrants were issued for his arrest.  *Id.* at 303-04.  He faced prison terms of three-and-a-half to twelve years on one of the charges and one year on the other, plus a potential prison term of two to four years for bail jumping if he failed to appear in court within thirty days.  *Id.* at 304.

More than two years after Pierre-Paul's death, on October 26, 2008, Abdul-Aleem was arrested in Greenwood, West Virginia.  *Id.*  The next day, Detective Kissane

read Abdul-Aleem his *Miranda* warnings, after which Abdul-Aleem stated that on

August 6, 2006, he was with Waldemar Rivera when he had an argument and fight with

Pierre-Paul; he left New York for West Virginia after the fight because he was frustrated

with his attorney; and he abandoned a rented Chevrolet Trailblazer in West Virginia; he

also identified Pierre-Paul in a photograph as the person he had fought. *Id.* at 379-82.

Thereafter, the New York City Police Department brought Abdul-Aleem to New York,

where he was charged with second-degree murder for the death of Pierre-Paul,

attempted second-degree murder as to Niles, second- and third-degree criminal

possession of a weapon, and first-degree reckless endangerment in violation of New

York Penal Laws §§ 125.25(1), 110/125.25(1), 265.03(2), 265.02(4), 120.25.  Dkt. 7-3 at 34.

## II.     *Procedural History*

### A.     **State Court Proceedings**

Prior to trial, the People sought to admit, to show Abdul-Aleem's state of

mind and consciousness of guilt, evidence that (1) on August 8, 2006, two days after

Pierre-Paul's murder, Abdul-Aleem failed to appear in court in connection with the

then-pending 2003 and 2006 criminal cases against him; (2) he faced a maximum

aggregate term of thirteen years' imprisonment on those cases; (3) he subsequently

pleaded guilty to second-degree bail jumping, admitting that he failed to appear on

August 8, 2006; and (4) he gave an alias to West Virginia police officers on November

25, 2006, and June 14, 2008.  Dkt. 1 at 28-29.  Defense counsel objected, arguing that such

4

prior crimes evidence was too prejudicial. *Id.* The trial court concluded that the evidence was probative of Abdul-Aleem's state of mind and thus admissible. *Id.*

Also pre-trial, Abdul-Aleem moved to suppress Niles's photo identification of him as the shooter on grounds that the procedure took place in the absence of defense counsel and was unduly suggestive. *Id.* at 29. Defense counsel also requested an evidentiary hearing to determine the reliability of Niles's testimony that he knew Abdul-Aleem well enough to not misidentify him as the shooter. *Id.* The trial court denied both motions and admitted Niles's identification. *Id.*

At trial, Niles testified to the sequence of events leading up to the shooting of Pierre-Paul and his subsequent interview with Detective Kissane. Dkt. 7-1 at 61-99. Detective Kissane corroborated Niles's testimony and testified about his search for Abdul-Aleem. Dkt. 1 at 31-33. Abdul-Aleem did not present a defense. Dkt. 7-1 at 560.

The prior crimes evidence was provided to the jury by way of stipulation, *id.* at 687-89, and the trial court included a limiting instruction with respect to the stipulated evidence when charging the jury, *id.* at 651-52. The trial court instructed that this evidence "was not offered for the purpose of proving that [Abdul-Aleem] had a propensity or predisposition to commit the crimes charged in this case and must not be considered . . . as such," but instead "was offered as evidence for . . . consideration on the issues of flight, consciousness of guilt, and to explain the delay in [his] arrest." *Id.*

5

On April 30, 2012, the jury found Abdul-Aleem guilty of second-degree murder, second-degree attempted murder, second- and third-degree criminal possession of a weapon, and first-degree reckless endangerment.  Dkt. 7-3 at 32.  He was then sentenced, as a second violent felony offender, to two indeterminate prison terms of (1) twenty-five years to life for the murder count, and (2) three-and-a-half years to seven years for the reckless endangerment count, which are to both run concurrently with an aggregate term of twenty-two years' imprisonment for the weapon possession counts.  *Id.* at 32-33.  He was also sentenced to a term of twelve years' imprisonment for the attempted murder charge, to run consecutively to the other sentences.  *Id.* at 33.  Abdul-Aleem's terms of imprisonment were to be followed by an aggregate fifteen years of post-release supervision.  *Id.*

Abdul-Aleem appealed his convictions to the Appellate Division, Second Department.  In March of 2014, in a brief filed by counsel, Abdul-Aleem argued that the trial court improperly allowed the People to present evidence that he failed to appear in court for two criminal proceedings two days after the shooting; he faced an aggregate maximum term of thirteen years' imprisonment for the unrelated crimes; he pled guilty to second-degree bail jumping for his failure to appear in court; and, after the shooting, he gave aliases to West Virginia police on two occasions.  Dkt. 7-2 at 16.  Abdul-Aleem also filed a supplemental *pro se* brief, in which he raised five additional challenges to his convictions:  (1) the trial court improperly denied his motion to suppress Niles's

identification; (2) the trial court improperly instructed jurors not to take notes; (3) he

was denied effective assistance of counsel because his counsel failed to investigate an

alibi defense; (4) there was insufficient evidence to convict for second-degree murder;

and (5) the prosecutor engaged in misconduct before the grand jury by allegedly

allowing Niles to give perjured testimony. *Id.* at 57.

Before the Appellate Division decided his appeal, on September 25, 2014,

Abdul-Aleem moved, *pro se*, to vacate the judgment pursuant to Section 440.10 of New

York's Criminal Procedure Law. Dkt. 7-5 at 29. He argued that (1) the prosecutor used

false testimony before the grand jury to secure an indictment and (2) his trial counsel

was ineffective for failing to investigate and present an alibi defense. *Id.* The trial court

denied the motion, concluding that Abdul-Aleem's first claim was procedurally barred

pursuant to Section 440.10(2)(b) because the claim could be determined by the

Appellate Division on his pending appeal, and the second claim was meritless because

the record reflected that his counsel provided "meaningful representation." *Id.* at 30, 34.

By decision dated November 25, 2015, the Appellate Division affirmed

Abdul-Aleem's convictions. *See Abdul-Aleem I*, 20 N.Y.S.3d at 154. As to the claim

raised in his counseled brief, the Appellate Division held that "evidence that there were

two criminal cases pending against [Abdul-Aleem] and that he pleaded guilty to bail

jumping was improperly admitted," but that "under the circumstances of this case, the

evidence was not so prejudicial as to deny [him] a fair trial" because the jury charge

7

emphasized that "uncharged crimes were not to be considered proof of propensity to commit the crimes charged." *Id.* at 155.  As to the issues raised in Abdul-Aleem's *pro se* brief, the Appellate Division concluded, without addressing the merits, that the five claims were "unpreserved for appellate review." *Id.* (citing N.Y. Crim. Proc. Law § 470.05(2) (contemporaneous objection rule)).  Leave to appeal to the New York Court of Appeals was thereafter denied on July 7, 2016.  *See Abdul-Aleem II*, 62 N.E.3d at 123.

On November 6, 2019, Abdul-Aleem, *pro se*, filed a second motion to vacate his judgment in Supreme Court, Queens County.  In his motion, Abdul-Aleem claimed that his trial counsel was ineffective for (1) failing to disclose a plea offer to first-degree manslaughter with a term of imprisonment for 23 years, and (2) failing to inform him that his sentences could run consecutively or be enhanced by his prior convictions.  Dkt. 47 at 10.  On March 15, 2021, the Supreme Court denied Abdul-Aleem's motion, concluding that he failed to establish ineffective assistance of counsel because the exhibits he submitted in support of his motion showed that he was present when, prior to trial, the 23-year plea offer was stated on the record, and the possibility of consecutive imprisonment terms was discussed.  *Id.* at 107.  Abdul-Aleem thereafter sought leave to appeal the Supreme Court's decision denying his motion to vacate judgment to the Appellate Division and the Court of Appeals; the applications were denied on November 29, 2021, and February 16, 2022, respectively.  Dkt. 44 at 6-7.

### B.      Proceedings Below

Abdul-Aleem, proceeding *pro se*, filed this habeas petition on September

26, 2017, and supplemented it on May 11, 2022, raising a total of five claims.  Dkt. 1 at

25; Dkt. 41 at 5.

### *DISCUSSION*

### I.      *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was

adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857

F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state

court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556,

560 (2d Cir. 2015).  "A federal court may reverse a state court ruling only where it was

'so lacking in justification that there was . . . [no] possibility for fairminded

disagreement.'"  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting

*Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per

curiam).

Generally, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citation omitted).  That is, federal courts may not review a state court ruling that "fairly appear[s] to rest primarily on state procedural law," so long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (citations omitted).  The Second Circuit has "held repeatedly that the contemporaneous objection rule" -- barring state appellate courts from reviewing arguments presented for the first time on appeal pursuant to New York Criminal Procedure Law § 470.05(2) -- "is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011).  Hence, the Circuit has affirmed the denial of habeas relief based on the Appellate Division's ruling that the failure of a petitioner to object at trial rendered a claim unpreserved for appellate review.  *See, e.g.*, *Garcia v. Lewis*, 188 F.3d 71, 81-82 (2d Cir. 1999) (affirming denial of habeas relief where petitioner's trial counsel failed to bring to trial court's attention a claim that he later attempted to advance on appeal).

To succeed on a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must demonstrate that (1) his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and (2) "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.  To satisfy the first prong -- the performance prong -- the record must demonstrate that "'in light of all the circumstances,' the acts or omissions of trial counsel 'were outside the wide range of professionally competent assistance.'"  *United States v. Nolan*, 956 F.3d 71, 79 (2d Cir. 2020) (quoting *Strickland*, 466 U.S. at 690). Establishing that counsel made, for example, "omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness," satisfies the first prong.  *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (alteration adopted).  "Under the second prong -- the prejudice prong -- a 'reasonable probability' of a different result is a 'probability sufficient to undermine confidence in the outcome.'"  *Id.* (quoting *Strickland*, 466 U.S. at 694).  In the context of federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," and federal courts must afford a "deference and latitude that are not in operation when the case involves a review under the *Strickland* standard itself."  *Harrington*, 562 U.S. at 101.

        To prevail on a claim of ineffective assistance of counsel under New York law, a defendant must show that "counsel failed to provide meaningful representation." *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y. 2019) (citations omitted).  Unlike the federal standard, *see Strickland*, 466 U.S. at 694, the defendant is not required to demonstrate that the ineffective assistance resulted in prejudice, *see Alvarez*, 125 N.E.3d at 122-23

(citations omitted).  Therefore, the New York standard "offers greater protection than the federal test because . . . even in the absence of a reasonable probability of a different outcome, inadequacy of counsel will still warrant reversal whenever a defendant is deprived of a fair trial."  *People v. Honghirun*, 78 N.E.3d 804, 807 (N.Y. 2017) (citation omitted).  Where the state law standard is more protective than the federal standard, the former subsumes the latter and the federal claim "may be regarded as having been adjudicated on the merits."  *Johnson v. Williams*, 568 U.S. 289, 301 (2017).

As for purported evidentiary errors, the Supreme Court has acknowledged its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts."  *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).  Consequently, "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial."  *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983).

Finally, claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court.  *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989); *United States v. Mechanik*, 475 U.S. 66, 106 (1986).

## II.     *Analysis*

Abdul-Aleem raises five claims in his habeas petition:  (1) his trial counsel provided ineffective assistance by failing to convey a plea offer; (2) his trial counsel

provided ineffective assistance by failing to investigate an alibi defense; (3) the trial

court improperly admitted Niles's identification of Abdul-Aleem as the shooter; (4) the

trial court improperly admitted prior crimes evidence; and (5) the prosecutor presented

false evidence to the grand jury.  Dkt. 1 at 16-18; Dkt. 41 at 3-4.  I address each in turn.

### A.      Counsel's Alleged Failure to Convey a Plea Offer to Abdul-Aleem

Abdul-Aleem argues in his supplemental petition that he was denied the

effective assistance of counsel when his attorneys failed to convey to him a plea offer of

23 years.  Dkt. 41 at 1.  Because the Queens County Supreme Court denied this claim,

raised in the second motion to vacate judgment, on the ground that the record showed

the plea offer was presented to, and not accepted by, Abdul-Aleem, this decision is an

adjudication on the merits, *see Johnson*, 568 U.S. at 301, and is entitled to "substantial

deference," *Fischer*, 780 F.3d at 560.  Moreover, Abdul-Aleem cannot show that this

decision "involved an unreasonable application of, clearly established Federal law" or

"was based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d).

The right to meaningful assistance of counsel, as outlined in *Strickland*,

also applies to the plea-bargaining process.  *See Lafler v. Cooper*, 566 U.S. 156, 162 (2012).

"If a plea bargain has been offered, a defendant has the right to effective assistance of

counsel in considering whether to accept it."  *Id.* at 168.  If "defense counsel allow[s] the

offer to expire without advising the defendant or allowing him to consider it, defense

counsel d[oes] not render the effective assistance the Constitution requires."  *Missouri v.*

*Frye*, 566 U.S. 134, 145 (2012). If, on the other hand, a defendant rejects a plea offer as a result of the ineffective assistance of counsel, the defendant must show (1) "there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it . . .)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164.

Applying these principles here, and assuming, without deciding, that Abdul-Aleem's supplemental petition was timely made, Abdul-Aleem has nonetheless failed to show that his counsel's actions were either deficient or prejudicial as required for habeas relief.[1] In support of this ineffective-assistance claim before the Queens County Supreme Court, Abdul-Aleem provided three exhibits that contradict his claim that defense counsel failed to convey the plea offer to him prior to trial. First, attached as Exhibit B to Abdul-Aleem's motion to vacate judgment is a copy of the State's file noting that a plea offer for first-degree manslaughter and a 23-year prison sentence was made on July 7, 2009. *See* Dkt. 47-2 at 101-02. Next, Abdul-Aleem attached as Exhibit C minutes from a December 8, 2010, calendar appearance, which reflect that Abdul-Aleem was "present in the courtroom," *id.* at 105, when the trial judge inquired whether any

---

[1] In opposition to Abdul-Aleem's supplemental petition, respondent argues that "the petition is untimely, even after considering the tolling periods." Dkt. 44 at 9. Because this claim fails on the merits, I do not address the supplemental petition's timeliness.

plea offer had been made, to which the State responded "[m]anslaughter in the first degree and twenty-three years," *id.* at 106.  Neither Abdul-Aleem nor his counsel expressed any interest in the offer at that time or indicated an unfamiliarity with it.  *Id.*  Finally, attached as Exhibit D is the 18-B billing sheet from Abdul-Aleem's trial counsel, showing that counsel consulted with Abdul-Aleem on December 8, 2010, when the plea offer was discussed in open court, and held plea conferences with him on January 3, 2011, and July 26, 2011, well in advance of the February 2012 trial.  *Id.* at 108.  The billing sheet also demonstrates generally that counsel conducted extensive work on this case and consulted consistently with Abdul-Aleem pre-trial, including on October 6, 2010, October 28, 2010, December 8, 2010, January 3, 2011, February 3, 2011, April 19, 2011, May 24, 2011, July 26, 2011, and October 26, 2011.  *Id.* at 108-11.  Given this record showing that Abdul-Aleem received the 23-year plea offer and rejected it prior to his trial, it was far from unreasonable for the Queens County Supreme Court to conclude that defense counsel fully complied with his "duty to communicate formal [plea] offers." *Missouri*, 566 U.S. at 145.

Moreover, even assuming that Abdul-Aleem's counsel was ineffective in conveying the plea offer, Abdul-Aleem has not shown there is a "reasonable probability" that he would have accepted the plea had he received different legal advice.  *Lafler*, 566 U.S. at 164.  Indeed, even at sentencing, defense counsel indicated that Abdul-Aleem had "always maintained his innocence with regard to the shooting."

Dkt. 7-1 at 743.  Thus, because the trial record contradicts the assertion that Abdul-Aleem would have accepted the 23-year plea offer, the prejudice prong of *Strickland* cannot be established, and the Queens County Supreme Court reasonably rejected Abdul-Aleem's ineffective assistance of counsel claim on the merits.

Accordingly, habeas relief on this claim must be denied.

### B.     Counsel's Alleged Failure to Investigate Abdul-Aleem's Alibi

In another challenge to his counsel's assistance at trial, Abdul-Aleem argues that he was denied effective assistance because counsel failed to investigate an alibi defense.  Dkt. 1 at 38.  In ruling on Abdul-Aleem's first motion to vacate judgment, the trial court concluded that this claim for ineffective assistance was meritless because "there is no documented record presented to corroborate" his alibi, and the trial record reflected that counsel provided "meaningful representation."  Dkt 7-4 at 62.  This determination is an adjudication on the merits, is entitled to "substantial deference," *Fischer*, 780 F.3d at 560, and will not be overturned by a federal court conducting habeas review unless the petitioner can establish that the state court's conclusion was unreasonable, *see* 28 U.S.C. § 2254(d).  Because Abdul-Aleem has failed to meet this high burden, this ineffective assistance claim fails to provide a basis for habeas relief as well.[2]

---

[2]     After the trial court's ruling on Abdul-Aleem's motion to vacate judgement, the Appellate Division concluded that this challenge to his counsel's assistance was "unpreserved for appellate review." *Abdul-Aleem I*, 20 N.Y.S.3d at 155.  This determination constitutes an independent and adequate state procedural bar, and thus, habeas relief on this claim can be denied on this ground as well.  *See Downs*, 657 F.3d at 104.

As discussed above, to establish a claim of ineffective assistance, a petitioner must show that his counsel's performance was deficient, and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Abdul-Aleem fails to meet both requirements. Abdul-Aleem argues that his trial counsel was ineffective for failing to investigate his alibi claim that, on the date of the Pierre-Paul's murder, Abdul-Aleem returned from a trip to Atlantic City with friends, including Keyanne Johnson, and that upon returning, Abdul-Aleem dropped off and picked up his friend Rivera at a barbershop located on Sutphin Boulevard, went with Rivera to a gas station on Hillside Avenue and Van Wyck Expressway, dropped Rivera off at a friend's house on 143rd and Van Wyck Expressway, and traveled to his mother's house in Harlem, where he slept, ate, and watched movies with his sister. Dkt. 7-4 at 13. Abdul-Aleem, however, fails to provide any evidence to support his alibi, such as affidavits from his two friends, mother, and sister, who he alleges were his alibi witnesses. *See* Dkt. 8 at 25. Without any corroborating evidence, and because "[f]ailure to make a meritless argument does not amount to ineffective assistance," *United States v. Regalado*, 518 F.3d 143, 150 n.3 (2d Cir. 2008), it was certainly reasonable for the state court to conclude that trial counsel's actions were not deficient.

As for prejudice, Abdul-Aleem cannot establish that there is a "reasonable probability" that investigation into his alibi defense would have changed the outcome at trial because the prosecution's evidence was overwhelming. *Lindstadt v. Keane*, 239 F.3d

191, 204 (2d Cir. 2001) ("Even serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt.").  Indeed, Niles reliably identified Abdul-Aleem as the shooter -- he testified at trial that he recognized Abdul-Aleem from seeing him in the neighborhood three to four times a week for the past year; that Abdul-Aleem confronted Niles and Pierre-Paul earlier on the day of the shooting; and that Niles saw Abdul-Aleem's face for three to four seconds from two feet away when he shot Pierre-Paul.  *See* Dkt. 7-1 at 68-70, 91.  Moreover, when Detective Kissane arrested and interviewed Abdul-Aleem two years after the shooting, Abdul-Aleem's own account of the day of the shooting corroborated Niles's account, as Abdul-Aleem confessed that on August 6, 2006, he was with Rivera when he had an argument and fight with Pierre-Paul, and he identified Pierre-Paul in a photograph as the person he fought.  *Id.* at 380.  On this record, it was similarly reasonable for the state court to conclude that Abdul-Aleem was not prejudiced by his counsel's failure to investigate an alibi defense.

Accordingly, because Abdul-Aleem has failed to show both deficiency and prejudice, this ineffective assistance of counsel claim is also without merit, and habeas relief on this claim must be denied.

### C.   Trial Court's Denial of a *Wade* Hearing

Nor is Abdul-Aleem entitled to habeas relief on his claim that the trial court failed to suppress Niles's in-court identification of Abdul-Aleem as the shooter

without first holding a *Wade* hearing.  Dkt. 1 at 44.  Because the Appellate Division

rejected this claim on the ground that it was "unpreserved for appellate review," *Abdul-*

*Aleem I*, 20 N.Y.S.3d at 155 (citing N.Y. Crim. Proc. Law § 470.05(2)), this determination

constitutes an independent and adequate state ground that precludes habeas review of

this claim in federal court.  *See Downs*, 657 F.3d at 104.  Moreover, even if Abdul-

Aleem's claim was not procedurally barred, it cannot be a basis for habeas relief because

Abdul-Aleem cannot show that the trial court's denial of a *Wade* hearing involved an

unreasonable application of federal law.  *See* 28 U.S.C. § 2254(d)(1).

       "The Supreme Court has established a two-step inquiry for evaluating the

constitutional permissibility of in-court identification testimony based on out-of-court

identification procedures." *United States v. Wong*, 40 F.3d 1347, 1359 (2d Cir. 1994).

First, the court must determine whether the pretrial "photographic identification

procedure was so impermissibly suggestive as to give rise to a very substantial

likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384

(1968).  Second, if the court concludes that the pretrial procedure was indeed unduly

suggestive, in-court identification testimony may nonetheless be admitted if the court

determines it to be independently reliable.  *See Manson v. Brathwaite*, 432 U.S. 98, 114

(1977).  To determine the reliability of an in-court identification, the court looks to the

totality of the circumstances, *United States v. Tortora*, 30 F.3d 334, 338 (2d Cir. 1994), and

may consider "the opportunity of the witness to view the criminal at the time of the

crime, the witness' degree of attention, the accuracy of his prior description of the

criminal, the level of certainty demonstrated at the confrontation, and the time between

the crime and the confrontation," *Manson*, 432 U.S.at 114.

      Abdul-Aleem argues that the trial court was required to hold a *Wade*

hearing to determine whether the pretrial photo array was unduly suggestive and

whether Niles's in-court identification was independently reliable.  *See* Dkt. 1 at 48-49.

There is, however, no constitutional requirement that a trial court grant a *Wade* hearing

in every case to determine whether an identification is admissible.  *See Watkins v.

Sowders*, 449 U.S. 341, 349 (1981).  Moreover, the record reflects that admitting Niles's in-

court identification was a reasonable application of federal law because the totality of

the circumstances establishes the identification's independent reliability.

      In fact, Niles testified that he observed the shooter's uncovered face for

"about three or four seconds" from "approximately two feet" during the shooting, and

that he was only "paying attention to him" -- i.e., the shooter -- at that time.  Dkt. 7-1 at

91, 174; *see also United States v. Finley*, 245 F.3d 199, 203-04 (2d Cir. 2001) (holding that

the trial court did not abuse its discretion in denying a *Wade* hearing where the

identification was made within 10 minutes of the crime and the witness observed the

defendant from *approximately 50 feet* (emphasis added)).  Nor was Abdul-Aleem

unknown to Niles -- Niles testified that he saw Abdul-Aleem three to four times a week

for a year prior to the shooting, and during those encounters, they would exchange long

stares.  *See* Dkt. 7-1 at 68-70; *see also Wiggins v. Greiner*, 132 F. App'x 861, 865 (2d Cir. 2005) (noting that the fact that the witness saw the defendant two to three times a week for seven months prior to the crime supported the independent reliability of the in-court identification).  Niles also testified that he and Pierre-Paul had a confrontation with Abdul-Aleem only a few hours before the shooting.  *See* Dkt. 7-1 at 70.  Finally, because the out-of-court photo identification occurred on the very same day as Pierre-Paul's murder, there is little reason to think that it, as opposed to Niles's own memory, informed his in-court identification.  *See* Dkt. 7 at 612; *cf. Neil*, 409 U.S. at 201 (holding that a seven-month interval between the crime and identification would be a "seriously negative factor in most cases" but did not preclude finding that identification reliable where the witness had more than a limited opportunity to observe the assailant).

In sum, because the record demonstrates that Niles had a strong independent basis for making a reliable in-court identification, there was no "very substantial likelihood of irreparable misidentification," *Simmons*, 390 U.S. at 384, and the trial court properly denied Abdul-Aleem's suppression motion without a *Wade* hearing. Accordingly, even if this claim were not procedurally barred, it is without merit and habeas relief must be denied.

### D. Admission of Evidence of Abdul-Aleem's Prior Uncharged Crimes

Abdul-Aleem's claim that his due process rights were violated by the trial court's admission of his prior uncharged crimes as evidence of his propensity to commit

crime is similarly meritless.  At trial, the prosecution introduced evidence, as relevant to

Abdul-Aleem's state of mind, that he failed to appear on two criminal cases two days

after the shooting, the prison terms he faced on each of those cases, that he pled guilty

to second-degree bail jumping for failing to appear, and that he twice used aliases to

West Virginia police.  *See* Dkt. 1 at 50.  The Appellate Division adjudicated this claim on

the merits, concluding that (1) "evidence that [Abdul-Aleem] used an alias while in

West Virginia was properly introduced" as evidence of consciousness of guilt, *Abdul-*

*Aleem I*, 20 N.Y.S.3d at 154; and that (2) although "evidence that there were two criminal

cases pending against [him] and that he pleaded guilty to bail jumping was improperly

admitted," "the evidence was not so prejudicial as to deny [him] a fair trial" because the

jury charge emphasized that "uncharged crimes were not to be considered proof of

propensity to commit the crimes charged," *id.* at 155.  This determination is entitled to

"substantial deference."  *Fischer*, 780 F. 3d at 560.  Moreover, because Abdul-Aleem

cannot show this decision amounted to an "unreasonable application" of clearly

established federal law, 28 U.S.C. § 2254(d)(1), habeas relief is not warranted.

   As a threshold matter, the issue of whether a state law rule admitting

uncharged crimes as propensity evidence violates the Due Process Clause has not been

decided by the Supreme Court.  *See Estelle v. McGuire*, 502 U.S. 62, 75 n. 5 (1991) ("[W]e

express no opinion on whether a state law would violate the Due Process Clause if it

permitted the use of 'prior crimes' evidence to show propensity to commit a charged

crime.").  "Given that the Supreme Court has not held that the use of uncharged crimes

would violate the Due Process Clause, the Appellate Division's rejection of this claim is

hardly either contrary to or an unreasonable application of clearly established Supreme

Court law." *Jones v. Conway*, 442 F. Supp. 2d 113, 131 (S.D.N.Y. 2006); *see also Likely v.*

*Ruane*, 642 F.3d 99, 102 (1st Cir. 2011) ("When the Supreme Court itself acknowledges

that an issue has not been resolved and is fairly debatable, there is no argument left that

the state court's decision is contrary to or an unreasonable application of 'clearly

established' Supreme Court precedent.").  Thus, the fact that there is no clearly

established Supreme Court precedent on whether due process is violated by the

admission of prior uncharged crimes disposes of this claim as a basis for habeas relief.

   More importantly, however, there is nothing in the trial record to suggest

that evidence of the prior uncharged crimes deprived Abdul-Aleem "of a *fundamentally*

*fair* trial," which is required for a grant of federal habeas relief on a state court's

evidentiary ruling.  *Taylor*, 708 F.2d at 891.  Indeed, the trial court extensively explained

the permissible purpose of the admitted evidence.  As to the evidence that Abdul-

Aleem "had two criminal cases pending and did not appear in court for those cases," the

trial court instructed that this evidence "was not offered for the purpose of proving that

[he] had propensity or predisposition to commit the crimes charged in this case and

must not be considered . . . as such," but instead was offered "for your consideration on

the issues of flight, consciousness of guilt, and to explain the delay in [his] arrest."  Dkt.

7-1 at 651-52.  As to Abdul-Aleem's flight and failure to appear on the pending criminal cases, the trial court similarly instructed that the jury must determine whether this evidence "demonstrates a consciousness of guilt," and that in making this determination, the jury "must consider whether the conduct has an innocent explanation," as "[c]ommon experience teaches that even an innocent person who finds himself under suspicion may resort to conduct which gives the appearance of guilt."  *Id.* at 661.  The trial court also instructed that "[s]uch evidence is only of slight value and standing alone, it may never be the basis for a finding of guilt."  *Id.*

Because "juries are presumed to follow their instructions," *Zafiro v. United States*, 506 U.S. 534, 540 (1993) (citation omitted), the trial court's extensive instructions on the proper use of the prior uncharged crimes evidence sufficed to cure any potential prejudice caused by its admission.  Given too, as discussed above, the overwhelming evidence of guilt presented at trial -- including Niles's identification and Abdul-Aleem's admission that he fought with Pierre-Paul on the day of the shooting -- it was reasonable for the Appellate Division to conclude that admission of this evidence was not so prejudicial as to deny Abdul-Aleem of a fundamentally fair trial.

Accordingly, this claim is without merit and habeas relief must be denied.

### E.  Prosecutor's Alleged Misconduct before the Grand Jury

Abdul-Aleem's final claim is that he is entitled to habeas relief because the prosecutor knowingly presented false witness testimony before the grand jury.

Specifically, Abdul-Aleem argues that Niles was allowed to testify before the grand jury that he knew Abdul-Aleem by name at the time of Pierre-Paul's murder, and that this testimony was proven to be false at trial when Niles testified to the contrary on cross-examination.  *See* Dkt. 1 at 55-56.  Because the Appellate Division rejected Abdul-Aleem's challenge to the grand jury proceedings on the ground that it was "unpreserved for appellate review," *Abdul-Aleem I*, 20 N.Y.S.3d at 155 (citing N.Y. Crim. Proc. Law § 470.05(2)), this determination constitutes an independent and adequate state ground that precludes habeas review of this claim in federal court, *see Downs*, 657 F.3d at 104.

And, even if Abdul-Aleem's claim of prosecutorial misconduct was not procedurally barred, habeas relief would nonetheless be impermissible because claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court.  *See Lopez*, 865 F.2d at 32; *see also Jones v. Artuz*, No. 97-CV-2063, 2002 WL 31006171, at *3 (E.D.N.Y. Aug. 30, 2002) (holding that petitioner's claim that the prosecutor knowingly used perjured grand jury testimony was not a cognizable basis for habeas review), *aff'd*, 96 F. App'x 742 (2d Cir. 2004).  Indeed, Abdul-Aleem's subsequent conviction forecloses any potential for habeas relief on this claim.  *See Lopez*, 865 F.2d at 32-33 (rejecting a collateral attack of state grand jury proceedings in federal court because the petit jury convicted defendant at trial, rendering the error, if any, before the grand jury harmless); *see also Mechanik*, 475 U.S. at 70 ("[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that

the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt."). Thus, even if, as Abdul-Aleem alleges, the prosecutor knowingly permitted a grand jury witness to give perjured testimony, such misconduct would be harmless because a petit jury ultimately found Abdul-Aleem guilty of each crime charged. Abdul-Aleem is therefore not entitled to relief on this claim.

## *CONCLUSION*

Abdul-Aleem has failed to show a basis for relief under 28 U.S.C. § 2254. Accordingly, his habeas petition is denied. Additionally, I decline to issue a certificate of appealability because Abdul-Aleem has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253. Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this case. The Clerk shall also mail copies of this memorandum decision and the judgment to Abdul-Aleem at his last known address.

SO ORDERED.

Dated:     New York, New York
           March 29, 2023

DENNY CHIN
United States Circuit Judge
Sitting By Designation

26